---

(No. 15747.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN DRYSCH, Plaintiff in Error.

*Opinion filed February 19, 1924—Rehearing denied April 3, 1924.*

1. CRIMINAL LAW—*when testimony of new witness is competent in rebuttal though part of it is competent in chief.* The People, in giving evidence in rebuttal, may call a witness not offered as a witness in chief because the State's attorney supposed the defendant would call him, and if such witness' testimony is all proper rebuttal evidence on the defense of alibi it is proper to admit it even though part of the testimony would have been competent as evidence in chief.

2. SAME—*a judgment entered without jurisdiction may be vacated after term.* A court has power to vacate a judgment at any time after the expiration of the term where the court was without jurisdiction to enter the judgment.

3. SAME—*what fraud will warrant vacation of judgment after term.* The fact that a judgment has been obtained through fraud constitutes a sufficient reason for vacating it after the term at which it was rendered, but the fraud must be a fraud committed by one of the parties on the court and not the perjury of a witness.

4. SAME—*as a general rule, judgment cannot be vacated after term.* Except in the cases of want of jurisdiction and fraud by the successful party, the jurisdiction of the court to modify, change or set aside a final judgment ceases with the expiration of the term.

5. SAME—*writ of error coram nobis does not lie to correct false testimony.* Even though a motion to vacate a judgment in a crimi-

nal case be regarded as in the nature of a writ of error *coram nobis,* such writ does not lie to determine a question of fact which has been adjudicated, even though decided wrongly, nor for alleged false testimony at the trial nor for newly discovered evidence.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN A. SWANSON, Judge, presiding.

A. A. PANTELIS, (THOMAS E. SWANSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and VIRGIL L. BLANDING, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

John Drysch was convicted in the criminal court of Cook county on an indictment charging him with robbery while armed with a pistol. He was tried at the February term, 1923. A motion for a new trial was made and continued to March 23, when it was overruled and judgment was entered on the verdict. Sixty days' time was allowed for filing a bill of exceptions, which was afterward extended, and the bill of exceptions was filed on August 11. Meanwhile, on June 6, a motion to vacate the judgment and reconsider the motion for a new trial had been made and denied. A writ of error has been sued out, and it is contended that the judgment should be reversed because of an abuse of judicial discretion in permitting the prosecution to examine a witness in rebuttal, and because the motion to vacate the judgment should have been allowed.

The evidence on behalf of the prosecution was substantially as follows: George Nobens testified that on the evening of May 25, 1921, at about 9:30, he was in a Stutz automobile with a young woman, a friend, in front of the bathing beach at Jackson Park. They had been there about ten minutes when three men came out of the bushes and

one of them had a big open-barrel revolver, which he thrust under Nobens' throat and told him to start the car up fast,—that they wanted to use it. The other two men jumped in the back of the car and Nobens drove it along for about twenty-five or thirty minutes until they got to Eighty-fifth street and the lake shore, when the men made him get out of the car and searched him but found nothing, as he had given his purse to the girl and she had hid it. The men then took the car and left Nobens and his companion at Eighty-fifth street. He hailed a passing automobile and was taken to the nearest telephone, where he reported the robbery to the police. He saw the three men the next night at the detective bureau and identified them.

Edward Murphy, a police officer, testified that with four or five other officers he was driving south on Michigan avenue when they noticed a Stutz car at Sixtieth street, which they stopped and questioned the three men who were in it. John Drysch was one of them. The other two were named Novak and Swyderski. One of these men said something about a Ford sedan. There was a Ford sedan about fifty feet back of the Stutz car with a man named Kral in it, and the officers arrested him also and took him to the station with the others. Murphy said that he questioned Drysch, and Drysch told him they got the car near the lake and they were going to get a lot of whisky.

William Shoemaker, another police officer, testified that he arrested Drysch on August 29, 1922, and that on September 2 Nobens identified him as the man who had held him up, and two days later Drysch told him that he did hold up a man and woman in Jackson Park, in company with Novak and Swyderski. They took a Stutz car away from them and drove down to Forty-seventh street and Michigan avenue, where they were met by two other fellows and were arrested by the police.

Drysch was indicted at the September term, 1922, of the criminal court. He testified, and denied that he was

in Jackson Park on the evening of May 25 or had anything to do with the robbery. He said that about seven o'clock in the evening, when he got home from work, he met a friend, Otto Kral, who was driving his Ford sedan and invited Drysch to ride. They drove over to a neighbor's, Bolig, who got in the Ford with his wife, Drysch and Kral, and they drove from their home in Cicero to Chicago and out on Michigan avenue to Forty-seventh street, where they stopped and got some ice cream. When they came out of the ice cream parlor they noticed some commotion on the street, and Kral and Drysch went over to the scene of the disturbance, leaving Bolig and his wife standing on the sidewalk. They saw the police questioning some people in an automobile, and the police arrested them as well as the persons in the car and took them all to the police station. That night officer Murphy asked Drysch to confess to taking the car, and when he would not do so he was beaten with a piece of rubber hose. He was beaten in the station four days in succession with this hose and was also struck with a billy and knocked unconscious. About a year and a half afterward he was arrested by officer Shoemaker and taken to the detective bureau, where he was detained for four days and was beaten every day and night in the presence of Shoemaker until he confessed he had taken the automobile on May 25, 1921. He denied that he ever told Murphy that he took the car or that he was going out to get "booze."

Mrs. Bolig testified that about 7:30 o'clock on the night of May 25, 1921, Drysch and Kral came to her home in Cicero and she and her husband went out riding with them, and about nine o'clock they all went into an ice cream parlor at Forty-seventh street and Michigan avenue. About a half hour later some commotion in the street attracted their attention and Drysch and Kral went across the street, leaving Mrs. Bolig and her husband in front of the ice cream parlor, where they waited some time for the others to return, but when they did not return her husband called

a taxicab and they went home.  Frank Bolig, her husband, testified to the same facts.

In rebuttal, Murphy testified that the arrest took place 100 feet north of Sixty-first street, on Wabash avenue, and that no one at any time beat or struck Drysch in his presence.  Shoemaker also testified that Drysch was not struck in his presence at any time.  The State's attorney then proposed to call Kral as a witness, stating that he anticipated that the defense would call him, but that since the defense had rested at noon without doing so, he decided to bring Kral in himself.  The court stated if Kral was on the way they would wait for him, and the defendant's attorney said the only point was that he would object to them putting him on the stand at this time; that they knew where he was, and if they wanted him they could have brought him in.  There was some discussion, counsel for the defendant objecting to any delay and afterward asking to talk to the witness privately.  The court stated that he had no right to give counsel permission to talk to the witness alone, and counsel then stated that he would not care to talk to him unless alone.  The witness was permitted to testify, the court saying that his testimony, whatever it might be, could only be in rebuttal.  Kral then testified that on the evening of May 25 Drysch went riding with him in his machine, with Novak and Swyderski; that he took them, by Drysch's direction, to Jackson Park and let them off at Jackson boulevard about 7:30 or 8:00 o'clock and was to meet them again at Forty-seventh street and Michigan avenue; that Bolig and his wife were not with them.  Afterward Kral drove to Forty-seventh street and Michigan avenue and waited until about nine o'clock, when the three came back in a Stutz machine which Drysch was driving, and both cars were driven to Fifty-ninth street and Wabash avenue, where the men were all arrested.

The argument that the court committed error and abused its judicial discretion in permitting this evidence to

be given in rebuttal is based upon the theory that nearly all the testimony was descriptive of the crime alleged and was not rebuttal evidence but was evidence in chief; that the State's attorney had obtained a statement from Kral long before the trial, knew what he would testify to, and should have examined him in chief; that his statement to the court that his attention "had been called to the fact that Kral was there at that time" was deceptive and had a tendency to lead the judge to believe that the prosecutor learned for the first time on the trial that Kral was with the defendant at the time of the alleged robbery. The testimony that Kral drove with Drysch, Novak and Swyderski to Jackson Park and that they got out of the car there, and that when they met him later they were in the Stutz car, would have been competent as evidence in chief but it was equally competent in rebuttal. The State's attorney was not bound to offer Kral as a witness in chief, and if he failed to do so, whether he supposed he knew what Kral would testify to or not, and after the defense had closed offered him to testify to matters which were only proper in chief, it was within the judicial discretion to refuse or permit him to testify. The testimony, however, was all competent in rebuttal and did not call for the exercise of judicial discretion. The objection made was to the delay in waiting for the witness, whose evidence the State's attorney knew about but failed to have the witness present because of his expectation that the defendant would call him. The testimony of the witness covered the period of time included in the defendant's evidence in regard to the alibi and was competent to contradict that evidence. The fact that a part of it might have been also competent in chief would not render it improper to receive it in rebuttal. The court stated that the evidence could only be in rebuttal. It was proper rebuttal evidence and there was no abuse of discretion in receiving it.

The motion to vacate the judgment and reconsider the motion for a new trial was made after the lapse of three

terms after the judgment was rendered and the court had
lost jurisdiction of the cause. It was based on the affidavit
of Kral that his testimony on the trial was false and that
the testimony of Drysch and Mr. and Mrs. Bolig was true;
that on the evening of May 25, 1921, he was with the
Boligs and Drysch constantly from about 6:30 until he
and Drysch were arrested, about 9:30, and neither he nor
Drysch knew anything about the hold-up or had anything
to do with it; that after their arrest he and Drysch were
taken to the central station and then separated; that he was
taken up-stairs and questioned in the presence of five or
six officers, and when he refused to answer to their satis-
faction one of the officers struck the affiant as hard as he
could in the face, stomach and body and kicked him on the
shins,—struck him at least thirty times,—and kept it up
until 4:30, and struck him once in the pit of the stomach so
that he was unconscious for ten minutes. This treatment
was kept up for four days, and on the fourth day he was
told that unless he swore he was out on the night of May
25, 1921, with Drysch on the alleged hold-up, he would be
beaten up until he did and sent to the penitentiary besides;
that the officers were out to get Drysch whether the confes-
sion was true or not. In consequence of these beatings and
threats Kral finally told the police he would swear to any-
thing they wanted him to, true or untrue. He then got
out on bond and the police arranged so that he would be
discharged at the preliminary hearing. Kral also testified
orally on the hearing of the motion.

The defendant argues the proposition that where a ver-
dict is obtained by the admitted perjury of a witness it
may be ground for vacating the judgment even after the
judgment term, citing *City of Chicago* v. *Nodeck*, 202 Ill.
257. It is held in that case that a court has power to va-
cate a judgment at any time after the expiration of the
term where the court was without jurisdiction to enter the
judgment, and also that where a judgment has been ob-

tained through fraud, such fact constitutes a sufficient reason for vacating it after the term in which it was rendered. The fraud, however, must be a fraud committed by one of the parties on the court and not the perjury of a witness. In the case cited the fraud was the fraud of the city of Chicago, one of the parties to the suit. Granting the two exceptions of want of jurisdiction and fraud by the successful party, the rule is otherwise universal that the jurisdiction of the court to modify, change or set aside a final judgment ceases with the expiration of the term. In the case of *People* v. *Rudecki,* 309 Ill. 125, the defendant was convicted of murder, and after the expiration of the term a confession was made by another person of his guilt of the crime. Upon motion for a new trial, after the expiration of the term at which judgment was rendered, on the ground of newly discovered evidence consisting of the confession, it was held that after the lapse of the term at which the judgment of conviction and sentence was pronounced, the court had no power to set aside its judgment or grant a new trial. It is a fundamental rule that where final judgment has been rendered in a cause and the term has expired, the court has no longer jurisdiction to change the judgment or to enter any further order in the cause.

The plaintiff in error insists that the motion to vacate was in the nature of a writ of error *coram nobis.* If it be admitted that this writ is applicable to criminal cases, the errors of fact which could be made the basis for it were not errors upon such questions of fact as arose on the pleadings, upon which issue was or might have been joined, or such questions of fact as constituted the basis of the cause of action or defense upon the merits of the case. (*Marabia* v. *Mary Thompson Hospital,* 309 Ill. 147.) The writ does not lie to determine a question of fact which has been adjudicated, even though decided wrongly, (*Beard* v. *State,* 81 Ark. 515; *Hamlin* v. *State,* 67 Kan. 724; *State* v. *Armstrong,* 41 Wash. 601; *State* v. *Stanley,* 225 Mo. 525;)

nor for alleged false testimony at the trial, (*Asbell* v. *State,* 62 Kan. 209; *Wilson* v. *State,* 46 Wash. 416;) nor for newly discovered evidence. (*Asbell* v. *State, supra.*) The motion to vacate the judgment was therefore properly denied.

The judgment of the criminal court will be affirmed.

*Judgment affirmed.*