MARINO *v*. RAGEN, WARDEN.

No. 93.   Decided December 22, 1947.

Petitioner *pro se.*

*George F. Barrett,* Attorney General of Illinois, *William C. Wines* and *James C. Murray,* Assistant Attorneys General, for respondent.

PER CURIAM.

Petitioner sought a writ of habeas corpus in the Circuit Court of Winnebago County, Illinois, alleging that his conviction in 1925 on a charge of murder was the result of a denial of his rights under the Federal Constitution. That court, after a hearing, quashed the writ; and as its order cannot be reviewed by any higher Illinois court under Illinois practice, this petition for a writ of certiorari is properly addressed to this Court. See *Woods* v.

*Nierstheimer,* 328 U. S. 211; 15 U. of Chic. L. Rev. 118, 122.

The facts conceded by respondent are as follows:

The common-law record recites that petitioner was arraigned in open court and advised through interpreters of the meaning and effect of a plea of guilty and that petitioner signed a statement waiving jury trial and pleading guilty. He was sentenced to life imprisonment. It does not appear, however, that an attorney was appointed to represent him. The waiver was not in fact signed by him, and no plea of guilty was entered at the trial. He was 18 years old at that time and had been in this country only two years. He did not understand the English language and it is doubtful that he understood American trial court procedure. The arresting officer served as an interpreter for petitioner at the original trial.

The State of Illinois speaking through the Attorney General admits the foregoing facts, confesses error, and consents to a reversal of the judgment below. He states that the writ of habeas corpus is a proper remedy in Illinois in this case because the facts, which he concedes to be a denial of due process of law under the decisions of this Court, were known to the court at the time of the original trial, though they were not a matter of record at the trial. Whether or not on this showing habeas corpus is an appropriate remedy in the court to correct a denial of due process is a question of state law as to which we accept the concession of the State's Attorney General.

In light of the confession of error (see *Young* v. *United States,* 315 U. S. 257; *Bozza* v. *United States,* 330 U. S. 160; cf. *Baltzer* v. *United States,* 248 U. S. 593) and the undisputed facts, we conclude that petitioner was denied the due process of law which the Fourteenth Amendment requires.

Permission to proceed *in forma pauperis* is granted. The petition for a writ of certiorari is granted and the judgment below is vacated and remanded to the Circuit Court.

*So ordered.*

MR. JUSTICE RUTLEDGE, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MURPHY join, concurring.

This case sharply points up a much larger problem, of growing concern to this Court, than merely the disposition to be made of Marino's petition in view of the state's confession of error. I agree that relief is due him, and I join in the Court's opinion. But I do not find his case different, except in one respect, from many others which have come regularly to this Court from Illinois in recent years, in which relief has been as regularly denied. The only substantial difference, in my judgment, is that here the state has confessed error. That confession raises, in my opinion, the question of the course this Court should follow in the future concerning the disposition of similar petitions from Illinois.

During the last three terms we have been flooded with petitions from Illinois alleging deprivations of due process and other constitutional rights. Thus in the 1944 term, out of a total of 339 petitions filed *in forma pauperis,* almost all by prisoners, 141 came from Illinois; in the 1945 term, 175 out of 393 were from Illinois; and in the 1946 term, 322 out of 528 came from that state.[1] With mechanical regularity petitions for certiorari to review

---

[1] This increasing volume no doubt is due in part to the assiduity with which prisoners seek relief either from prison or from the tedium of prison life. But that not all of it can be attributed to that factor seems clear from the fact that no other state presents anything approaching such a volume of petitions or so complicated a procedure for finally disposing of the questions raised.

Illinois' refusals to grant relief, often even to grant a hearing, have been denied.[2] We have adhered consistently to the practice of not entertaining such a petition when it seemed to appear that the applicant had not sought the appropriate state remedy. *Woods* v. *Nierstheimer,* 328 U. S. 211. And, as a corollary of this practice, we have insisted that the federal courts deny a hearing to an applicant for *habeas corpus* who has not exhausted his state remedies. *Ex parte Hawk,* 321 U. S. 114; *Ex parte Abernathy,* 320 U. S. 219 and cases cited.

This rule, requiring exhaustion of state remedies as a condition precedent to federal relief, has been firmly established by repeated decisions of this Court. Even in extreme situations its application has been justified by sound administrative reasons. See *Mooney* v. *Holohan,* 294 U. S. 103, 115. But it has always been clear that the rule may be applied only on the assumption that an adequate state remedy is actually available. *Carter* v. *Illinois,* 329 U. S. 173, 176; *Woods* v. *Nierstheimer, supra* at 217; *Ex parte Hawk, supra* at 118. And it would be nothing less than abdication of our constitutional duty and function to rebuff petitioners with this mechanical formula whenever it may become clear that the alleged state remedy is nothing but a procedural morass offering no substantial hope of relief. Experience has convinced me that this is true of Illinois.

This case presents a flagrant example of deprivation of due process. In 1925 petitioner was convicted of murder and sentenced to life imprisonment. He was then eighteen years old and unable to speak English, having arrived in the United States from Italy less than two years before.

[2] Of the 322 petitions filed in the 1946 term, only two were granted. In *Foster* v. *Illinois,* 332 U. S. 134, the narrow scope of review by writ of error in Illinois precluded relief here; in *McLaren* v. *Nierstheimer,* 329 U. S. 685, the judgment was vacated and the case remanded after the state confessed error.

The police officer who arrested him served as one of the two interpreters at his trial. He was not represented by counsel nor, as far as can be determined, was his right to counsel explained to him. See *Foster* v. *Illinois*, 332 U. S. 134, dissenting opinion 141. Although the record shows that petitioner signed a written waiver of jury trial, which stated that he had entered a plea of guilty, in fact he did not sign any such waiver, and no guilty plea appears to have been entered. His sentence was imposed one week after the indictment.

Twenty-two years later these facts were established at a hearing in the Circuit Court of Winnebago County, Illinois, on petitioner's application for *habeas corpus*. Nevertheless, the writ was denied without assignment of any ground.[3] Petitioner sought certiorari in this Court, and when called upon for a response, Illinois confessed error. While I concur in the Court's judgment, the light which the confession of error sheds on the Illinois procedural labyrinth confirms the growing conviction that Illinois offers no adequate remedy to prisoners situated as is the present petitioner.

The trouble with Illinois is not that it offers no procedure. It is that it offers too many, and makes them so intricate and ineffective that in practical effect they amount to none. The possibility of securing effective determination on the merits is substantially foreclosed by the probability, indeed the all but mathematical certainty, that the case will go off on the procedural ruling that the wrong one of several possible remedies has been followed.[4]

---

[3] But for the state's confession of error, our usual practice in these cases would lead us to assume that the denial had been on the ground that *habeas corpus* was not the appropriate state remedy. See note 4.

[4] Since the petitions more often than otherwise are disposed of by mere denial without assignment of grounds, it is seldom possible

Thus, our understanding of Illinois law at the time of *Woods* v. *Nierstheimer, supra,* was that *habeas corpus* would not lie in such a case as this because petitioner neither challenged the jurisdiction of the court which convicted him, nor alleged any subsequent events having the effect of voiding that conviction. 328 U. S. 211, 215. Hence we assumed that *coram nobis* would be the appropriate remedy. But Illinois now suggests that we have oversimplified the situation. That *habeas corpus* is appropriate here is explained by the state's attorney general as follows:

> "In order to keep Illinois' position constant and consistent before this court, we venture to point out that although the present Attorney General has prevailed upon this court to recognize that *coram nobis* is a remedy in Illinois exclusive of *habeas corpus,* where the facts constituting denial of due process but *dehors* the record were not known to the trial court at the time of the imposition of sentence, we have always conceded that where, as in the instant case, those facts although not a matter of record at the trial were nevertheless known to the trial court, *habeas corpus* may be available in proper cases. We deem *habeas corpus* to be clearly appropriate under the Illinois law in this case. We do not concede, however, that there are no cases in which writ of error, as distinct from either *coram nobis* or *habeas corpus,* would be the proper remedy."

Notwithstanding the explanation, the extent of the applicability of this expanded scope of *habeas corpus* "in

---

for this Court to know whether the Illinois court has acted on the merits or on the state ground that the wrong remedy has been followed. It is therefore always possible to assume here that the ruling was of the latter type and this would seem to be true, if not of every such determination, at least of all until the last conceivably possible route has been followed.

proper cases" is by no means clear. Perhaps it is limited to a case where over twenty years have elapsed since the conviction, and hence neither writ of error nor *coram nobis* is available; perhaps it would be available any time after the five-year statute of limitations on *coram nobis* had run.[5] Possibly the rule is general for cases of deprivation of constitutional rights whenever the judge responsible for the deprivation had knowledge of the facts. I can only indulge in speculation, because I am aware of nothing in the Illinois statutes or decisions which defines these novel limitations on the use of *habeas corpus* or supports the attorney general's position. Nor do I know whether the lower Illinois courts accept this position in view of the limited area to which the writ has been confined by the state supreme court decisions. See *e. g., Thompson* v. *Nierstheimer,* 395 Ill. 572; *Barrett* v. *Bradley,* 391 Ill. 169.

In short, the effect of the state's confession of error in this case is not to clarify, it is rather to confuse further, a situation already so muddled that only one rational conclusion may be drawn. It is that the Illinois procedural labyrinth is made up entirely of blind alleys, each of which is useful only as a means of convincing the federal courts that the state road which the petitioner has taken was the wrong one. If the only state remedy is the possibility that the attorney general will confess error when he determines that a flagrant case will not survive scrutiny by this Court,[6] it is hardly necessary to point out that the federal courts should be open to a petitioner even though he has not made his way through several

---

[5] Ill. Rev. Stat. (1947) c. 110, § 196. This five-year limitation period applies to "all *coram nobis* proceedings." *People* v. *Touhy,* 397 Ill. 19, 26; *People* v. *Rave,* 392 Ill. 435. Writ of error is governed by a common-law limitation period of twenty years. *People* v. *Chapman,* 392 Ill. 168; *People* v. *Murphy,* 296 Ill. 532.

[6] See *McLaren* v. *Nierstheimer,* 329 U. S. 685.

courts applying for *habeas corpus*, then writ of error, and finally *coram nobis*.[7]

Moreover, even though there may be an avenue of escape through the state courts in a rare case, the situation is no different as long as the technical distinctions between the various remedies are so fine that only an oracle could point out the proper procedural road. The exhaustion-of-state-remedies rule should not be stretched to the absurdity of requiring the exhaustion of three separate remedies when at the outset a petitioner cannot intelligently select the proper way, and in conclusion he may find only that none of the three is appropriate or effective. That each is severely restricted is clear.[8] That any one

---

[7] "Under present procedures, it is nearly impossible to secure adjudication of the merits of alleged constitutional defects in judgments of conviction in Illinois courts; yet petitioners must present their applications for consideration seven to twelve times in order to escape the procedural maze of the state courts and to secure their initial hearings on the truth of their allegations in the federal courts." Note, A Study of the Illinois Supreme Court, 15 U. of Chi. L. Rev. 107, 120.

[8] Review by writ of error in Illinois is limited to matters in the common-law record where no bill of exceptions is filed. *Carter* v. *Illinois*, 329 U. S. 173; *Foster* v. *Illinois*, 332 U. S. 134; *People* v. *Owens*, 397 Ill. 166. The bill of exceptions must be preserved within fifty days after judgment was entered unless an extension is granted during that time. Ill. Rev. Stat., c. 110, § 259.70A. *Habeas corpus* has been thought to be available only to challenge jurisdiction in the narrow sense of jurisdiction over the person or the subject matter, or to show events subsequent to the trial which render the original conviction void. *Woods* v. *Nierstheimer*, 328 U. S. 211; *Thompson* v. *Nierstheimer*, 395 Ill. 572; *Barrett* v. *Bradley*, 391 Ill. 169. *Coram nobis* is available only to present factual questions of a certain kind, *People* v. *Drysch*, 311 Ill. 342, 349, which were not known to the trial court, *People* v. *Schuedter*, 336 Ill. 244, which do not conflict with jury findings, and which petitioner failed to raise because of excusable mistake rather than negligence on his, or his attorney's part, see *People* v. *Rave*, 392 Ill. 435, 440. See Comment, Collateral Relief from Convictions in Violation of Due Process in Illinois, 42 Ill. L. Rev. 329.

is available as a matter of right is by no means clear.[9] And even if each has a limited function exclusive of the other two, it may well be that no one is adequate in a case where the petitioner must show a combination of facts to establish a violation of his constitutional rights.[10]

The Illinois scheme affords a theoretical system of remedies. In my judgment it is hardly more than theoretical. Experience has shown beyond all doubt that, in any practical sense, the remedies available there are inadequate.[11] Whether this is true because in fact no remedy

---

[9] It is questionable whether Illinois affords a remedy for a man deprived of his right to counsel. See *Foster* v. *Illinois*, 332 U. S. 134, dissenting opinion 141; *People* v. *Evans*, 397 Ill. 430. The trial judge would surely know that he had refused to appoint counsel and would be presumed to be familiar with the record, see *People* v. *Rave*, 392 Ill. 435, 440; hence *coram nobis* would not lie. Assuming that the clerk makes the routine entry to the effect that the accused was apprised of his rights, which he promptly waived, see *People* v. *Green*, 355 Ill. 468, writ of error would afford inadequate review. See *Carter* v. *Illinois*, 329 U. S. 173. Only if the attorney general's view of *habeas corpus* would extend to such a case would a remedy be available. There may even be doubt whether an allegation that a confession was obtained by coercion would warrant review, see *People* v. *Drysch*, 311 Ill. 342; *People* v. *Schuedter*, 336 Ill. 244.

[10] For example, petitioner might allege that he had inadequate time to prepare his defense, that the trial court denied him counsel, and that a forced confession was used as evidence at the trial. The first allegation could be made only by writ of error because the crucial dates would be a matter of record; the second only by *habeas corpus*, if at all, because the trial court is presumed to know what is in the record and he would certainly know that he had refused to appoint counsel; and the third allegation only by *coram nobis* because the facts would be unknown to the trial court. Perhaps none of the allegations considered separately would establish a deprivation of due process, yet with the whole picture before the court a violation of constitutional rights would be apparent.

[11] See note 1 and text; also note 2. "[The] inevitable conclusion must be reached that the state of Illinois provides no satisfactory or adequate method for post-conviction hearings . . . ." Note, A Study of the Illinois Supreme Court, 15 U. of Chi. L. Rev. 107, 128.

.

exists, or because every remedy is so limited as to be inadequate, or because the procedural problem of selecting the proper one is so difficult, is beside the point. If the federal guarantee of due process in a criminal trial is to have real significance in Illinois, it is imperative that men convicted in violation of their constitutional rights have an adequate opportunity to be heard in court. This opportunity is not adequate so long as they are required to ride the Illinois merry-go-round of *habeas corpus, coram nobis,* and writ of error before getting a hearing in a federal court.

Consequently, as far as I am concerned, the Illinois remedies are exhausted here, apart from the state's confession of error. I also think that, until that state affords a reasonably clear and adequate means for presenting and disposing of such questions as Marino's case involves, this Court should no longer require exhaustion of its present scheme of ineffective and inadequate remedies before permitting resort to the federal district courts sitting in Illinois.[12] We should neither delay nor deny justice, nor clog its administration, with so useless and harmful a procedural strangling of federal constitutional rights.

---

[12] This Court has frequently recognized that the policy underlying the exhaustion-of-remedies doctrine does not require the exhaustion of inadequate remedies. *Hillsborough Twp.* v. *Cromwell,* 326 U. S. 620; *White* v. *Ragen,* 324 U. S. 760; *Driscoll* v. *Edison Co.,* 307 U. S. 104; *Mountain States Co.* v. *Comm'n,* 299 U. S. 167; *Corporation Comm'n* v. *Cary,* 296 U. S. 452; *Pacific Tel. Co.* v. *Kuykendall,* 265 U. S. 196; *Okla. Gas Co.* v. *Russell,* 261 U. S. 290; *Moore* v. *Dempsey,* 261 U. S. 86; *Wallace* v. *Hines,* 253 U. S. 66.