UNITED STATES of America ex rel.
Harold Lee HANKINS

v.

Emanuel WICKER.

Civ. A. No. 84–70 Erie.

United States District Court,
W.D. Pennsylvania.

March 13, 1984.

MEMORANDUM OPINION

WEBER, District Judge.

The petitioner, Harold Lee Hankins, a state prisoner, has filed a habeas corpus

petition pursuant to 28 U.S.C. § 2254, accompanied by a request to proceed in forma pauperis. We shall grant the request, order the petition filed without charge to the petitioner, and order that the respondent file an answer to the petition.

Hankins was convicted in the Court of Common Pleas of Erie County, Criminal Division, on charges of robbery and theft on May 19, 1981, following a one day trial. He was sentenced to concurrent terms of imprisonment, the most severe of which was from five to ten years, on February 12, 1982.[1] He was removed to the State Correctional Institution at Huntingdon, Pennsylvania. A notice of appeal was filed by counsel for the petitioner on March 9, 1982. Hankins' appeal is currently pending in the Superior Court of Pennsylvania at No. 295 Pittsburgh, 1982. Oral argument was heard on January 24, 1984 but no disposition has been made. Hankins has also been sentenced to serve a term of ten to twenty years on an unrelated charge after the completion of the sentence arising from the judgment currently under attack. This latter sentence was imposed by the Court of Common Pleas of Crawford County.

Hankins recites several grounds upon which the allegation of unlawful confinement is based. First, he asserts a violation of due process and equal protection because of a twenty-one month delay in the disposition of his direct appeal. Second, he contends that at trial he was denied the representation of counsel of his choice in that he was denied sufficient time to retain private counsel and was forced to proceed to trial represented by the Public Defender. He argues that as a result he was denied sufficient time to adequately prepare. Hankins contends that these circumstances amounted to a violation of his right to counsel guaranteed by the 6th and 14th Amendments. In a third and related averment, Hankins argues that he is being de-nied effective representation on appeal due to the absence of portions of the lower court record. And finally, Hankins alleges that he was arbitrarily denied the opportunity to file pretrial motions to suppress illegally obtained evidence.

I. Exhaustion of State Remedies.

Ordinarily, federal habeas corpus relief is only available after an exhaustion of state remedies. 28 U.S.C. § 2254(b). Federal courts must stay their hand and permit the state appellate process to take its course. *Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971). This assures appropriate deference to the state system in accord with traditional notions of comity.[2] It guarantees that the state system shall be afforded the opportunity to rectify its own errors as well as assume its proper place in the consideration of alleged constitutional deprivations. It is also well settled that this doctrine requires the exhaustion of remedies and not the exhaustion of the petitioner in his pursuit of appellate relief following a conviction. An inordinate delay in the state proceedings may form an adequate basis for federal habeas corpus relief. Section 2254(b) provides a statutory basis for an exception to the exhaustion requirement where it appears that a petitioner's state afforded right to a meaningful appeal has been frustrated. It provides, in pertinent part:

(b) An application for writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

1. The period between the verdict and the sentence was occupied by the pendency of post-trial motions in the trial court, *see infra* pp. 10, 11 and 13.

2. It is well settled that there is no jurisdictional bar to a federal court granting habeas corpus relief in appropriate cases. *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *United States ex rel. Graham v. Mancusi,* 457 F.2d 463, 468 (2d Cir.1972).

The doctrine of exhaustion turns on the availability of state remedies sufficient to allow petitioner to have his federal claims considered as he moves through the state system. If an appropriate remedy does not exist or its utilization is frustrated in the state system, and the door to the federal court is closed· by virtue of the exhaustion requirement, there exists no forum for the consideration of petitioner's constitutional claims. The deference accorded the state judicial process must give way to the primary role of the federal courts to redress constitutional deprivations. The essential feature of the extraordinary relief fashioned by Congress is the ability to cut through the barriers of form and procedure. *Hensley v. Municipal Court*, 411 U.S. 345, 349–350, 93 S.Ct. 1571, 1573–74, 36 L.Ed.2d 294 (1973); *Harris v. Nelson*, 394 U.S. 286, 291, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969). Congress intended that the writ be preserved as a "swift and imperative remedy in all cases of illegal restraint or confinement." *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 490, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973).

Justice Rutledge articulated the rationale which has sustained the well-reasoned exception to the exhaustion requirement. He stated:

... It would be nothing less than abdication of our constitutional duty and function to rebuff petitioners with this mechanical formula whenever it may become clear that the alleged state remedy is nothing but a procedural morass offering no substantial hope of relief. *Marino v. Ragen*, 332 U.S. 561, 68 S.Ct. 240, 92 L.Ed. 170 (1947), (Rutledge, J., concurring).

The Supreme Court stated in *Bartone v. United States*, 375 U.S. 52, 54, 84 S.Ct. 21, 22, 11 L.Ed.2d 11 (1963), "where state procedural snarls or obstacles preclude an effective state remedy against unconstitutional convictions, federal courts have no other choice but to grant relief in the collateral proceedings." The Third Circuit in *Zicarelli v. Gray*, 543 F.2d 466, 472 (3rd Cir.1977) emphasized the rationale of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), and the necessity of a federal court to scrutinize whether the state system granted a fair opportunity to consider arguments that are raised in a petition for federal habeas corpus. *Ray v. Howard*, 486 F.Supp. 638 (E.D.Pa.1980).

We find the twenty four month delay in the disposition of Hankins' direct appeal, to which is added the nine month period between his conviction and the filing of a notice of appeal, sufficient to question the adequacy of the state remedy. We do not think it a detriment to petitioner's present claims that he has failed to present his claim denial of due process first to the state courts. We must only consider whether the federal claim has been fairly presented to the state judiciary, *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), and where the state process is itself the basis for the claim denial of due process the issue has properly been presented. In *Way v. Crouse*, 421 F.2d 145, 146–147 (10th Cir. 1970), the court stated:

Just as a delay in the adjudication of a post conviction appeal may work a denial of due process so may a like delay in a determination of a direct appeal. The question presented here is in what court should petitioner seek vindication of his asserted constitutional grievance. In our view Wade properly resorted to the federal court, which should not without knowing the facts and circumstances of the 18 month delay, have required him at this late date to commence a completely new and independent proceeding through the very courts which are responsible, on the face of the pleadings, for the very delay of which he complains.

Accordingly, we conclude that petitioner's claimed denial of due process based upon the delay in the disposition of his direct appeal is now properly before us as are those claims which are the subject of the direct appeal filed in the state court.

II. The Delay in Petitioner Hankins' Direct Appeal.

Whether a delay in any particular case amounts to a denial of due process must

necessarily depend upon a consideration of the facts and circumstances of each case. We now turn to Hankins' allegations of inordinate delay in the present case. As we have noted, petitioner claims a specific denial of due process in that the delay in the disposition of his direct appeal has been excessive and intentional.

■ Obstacles in the state judicial process may work to deny a state prisoner his federal right to due process of law, *Morgan v. State of Tennessee*, 298 F.Supp. 581, 583 (E.D.Tenn.1969), and this includes any substantial retardation of the state appellate process. *Rheuark v. Shaw*, 628 F.2d 297 (5th Cir.1980); *see also, McLallen v. Henderson*, 492 F.2d 1298 (8th Cir.1974); *Rivera v. Concepcion*, 469 F.2d 17 (1st Cir.1972); *Tramel v. Idaho*, 459 F.2d 57 (10th Cir.1972). While the constitution does not require that the states afford a right to appellate review, *Ross v. Moffitt*, 417 U.S. 600, 611, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974); *Ortwein v. Schwab*, 410 U.S. 656, 660, 93 S.Ct. 1172, 1174–75, 35 L.Ed.2d 572 (1973), where it provides such a right following a criminal conviction, the process must meet the minimum requirements of due process and equal protection. *Douglas v. California*, 372 U.S. 353, 363, 83 S.Ct. 814, 819–20, 9 L.Ed.2d 811 (1963); *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956). A delay in the adjudication of a post conviction appeal may work a denial of due process, and so may a like delay in the determination of a direct appeal. *See, e.g. Way v. Crouse*, 421 F.2d 145 (10th Cir.1970).

Procedural rules governing the appellate process in Pennsylvania do not on their face suggest a lengthy process. We believe, as the following review indicates, that quite the contrary is intended. Exclusive jurisdiction of appeals from final orders of the Court of Common Pleas, with certain enumerated statutory exceptions, is vested in the Superior Court. 42 Pa.C.S.A. § 742. The time for taking an appeal to the Superior Court and the procedures to be followed are set forth in the Pennsylvania Rule of Appellate Procedure 903 et seq.

An appeal permitted by law as of right must be filed within thirty days after the entry of the order from which the appeal is taken. Pa.R.App.P. 903. Upon transmission of the record to the Appellate Court the Prothonotary is instructed to immediately enter the appeal upon the docket and to give appropriate notice of the appellate docket number to all the parties. Pa.R. App.P. 907. The record on appeal, including the transcript and exhibits necessary for the determination of the appeal must be transmitted to the Appellate Court within forty days after the filing of the notice of appeal. Pa.R.App.P. 1931. Upon receipt of the record in the Appellate Court and after the appeal has been docketed, the Prothonotary is instructed to file the record in the Appellate Court. And thereafter the Prothonotary of the Appellate Court is instructed to immediately notify all parties and the Administrative Office on the date on which the record was filed and thereupon give notice to all parties of the date, if any, specially fixed by the Prothonotary for the filing of a brief of the appellant. Pa.R. App.P. 1934. The Rules of appellate procedure provide for a deferred briefing schedule in those instances where the Prothonotary has determined that the matter will probably not be reached by the Court for argument within thirty days after the latest date on which the last brief could be filed under the usual briefing schedule. In such a case the Prothonotary is instructed to fix a specific calendar date as the last date for the filing of the brief of the appellant in the matter, and it must be such that the latest date on which the last brief in the matter could be filed under the rules will fall approximately thirty days before the probable date of argument or submission to the matter to the Court. Pa.R. App.P. 2185. After the appellant has filed his brief the appellee must serve his brief within thirty days. Id. In the event that a party fails to comply with the time requirement set forth in the rules, the penalty may well be dismissal upon motion by party or denial of an opportunity for argument except by permission of the court. Pa.R. App.P. 2188. The Prothonotary of the Ap-

pellate Court is required to give notice to the parties of the date and place in which oral argument has been scheduled, and although the parties may agree to submit a case for a decision on the briefs, the Court may direct that the case be argued. Pa.R. App.P. 2311, 2312.

It is apparent from a reading of the rules governing appellate procedure that an expeditious appeal process is contemplated. Provisions relating to the transcription and transfer of the record to the appellate court, those relating to the scheduling of briefs, and those requiring prompt notice of submission indicate that a prompt appeal is contemplated by both statute and by the appropriate rules of appellate criminal procedure.

Similarly, the procedural rules governing the filing and disposition of post-trial motions following a conviction but prior to the commencement of direct appeal suggest a process geared to expeditiousness. These procedures are set forth in the Pennsylvania Rules of Criminal Procedure. Rule 1123 provides that within 10 days after a finding of guilt, the defendant must file written motions for a new trial and/or arrest of judgment. The Rule provides that argument or a hearing or both shall be scheduled and heard promptly after such motions are filed. An amendment to Rule 1123 provides that if the grounds asserted do not require a transcript, then neither the filing, argument, nor hearing of the post verdict motions are to be delayed for the lack of a transcript or the notes of the testimony.

An appeal may not be taken in the absence of a final order or the disposition of post-trial motions and often time the delay on the disposition of post verdict motions by the court *en banc* is attributable to the delay in the transcription of the court proceedings. At the time of Hankins' conviction, Rule 1123 did not provide for the hearing of post verdict motions under the limited circumstances exception to the transcript requirement; however, we note that petitioner's trial lasted one day and it is unlikely that a delay in the disposition of post verdict motions is attributable to the need for a written transcript.

In reviewing the facts of the instant case the court looks to the petition and also relies upon certain facts which although outside the record are matters about which the court takes judicial notice. Hankins was convicted on May 19, 1981 at which time he was proceeding with what appears to have been the advisory assistance of the Public Defender's Office. Post trial motions were filed thereafter apparently by newly-appointed counsel. An Opinion and Order was issued on December 7, 1981 affirming petitioner's conviction and clearing the way for his subsequent sentence. He was sentenced on February 12, 1982 and a notice of appeal was filed on March 9, 1982. Petitioner was thereafter represented by new counsel in his direct appeal to the Superior Court. A brief was filed on behalf of the petitioner on October 12, 1982, and a responsive brief was timely filed by the Commonwealth. On February 16, 1983, counsel for the petitioner on appeal was informed to list the case for oral argument. This was done by a letter of counsel to the Prothonotary of the Superior Court dated February 21, 1983. Thereafter counsel for the petitioner and petitioner himself contacted the Superior Court Prothonotary's Office in an attempt to determine when oral argument would be set. Counsel wrote the Prothonotary on September 6, 1983, and subsequently received a returned phone call by which he was informed that the matter would be submitted to the Court at oral argument in due course. · Petitioner's letter to the Prothonotary was answered by correspondence dated October 25, 1983, in which it was stated that counsel for the petitioner would be informed of the date when argument would be heard. Petitioner thereafter filed this writ of habeas corpus received by the Clerk on November 30, 1983. Oral argument was scheduled and heard on January 24, 1984, in the Superior Court.

We take note that over two and one-half years have passed since petitioner's conviction and no appellate court has disposed of

the claimed errors at petitioner's one day trial. We have noted that the initial nine months of that period involve proceedings subsequent to the conviction but prior to the time of sentencing in the Court of Common Pleas. In passing upon petitioner's claim, we feel that the time period involved in the disposition of post-conviction motions must be aggregated with the period of delay in his direct appeal. The Rules do not provide an absolute right to review by an *en banc* court or by a judge other than the trial court. A petitioner may be denied the opportunity to have the rulings of the trial judge reviewed by a higher court or by other judges until his appeal is submitted to the next highest court. This is so where petitioner is bound by the rules to raise in post verdict motions those issues he might eventually raise on direct appeal under penalty of forfeiture and because the trial judge is free to make any decisions and rulings which could be made by a court *en banc* should *he* determine that the post verdict motions shall be argued before himself. We feel that measurement of the time on appeal for purposes of evaluating Hankins' claim must include the initial post-verdict period during which Hankins attacked his conviction in the trial court or before the court *en banc*. We recognize that some of the delay in disposing of petitioner's appeal may be attributable to the petitioner himself.[3]

Federal Courts recognize that excessive delays in state court proceedings in which a defendant claims that his conviction was obtained in violation of his constitutional rights may deny the defendant due process of law and also may justify a federal court in considering alleged denials of due process relating to the delay itself and also justify the consideration of the merits of the habeas corpus petition. *See, e.g. Smith v. State of Kansas,* 356 F.2d 654 (10th Cir.1966), *cert. denied* 389 U.S. 871, 88 S.Ct. 154, 19 L.Ed.2d 151 (1967), (more than a year elapsed since filing post conviction relief and still no argument heard); *Jones*

*v. Crouse,* 360 F.2d 157 (10th Cir.1966), (eighteen month delay in appeal from a denial of motion for post conviction relief); *Dixon v. State of Florida,* 388 F.2d 424 (5th Cir.1968) (twenty month delay in post conviction proceedings); *St. Jules v. Beto,* 462 F.2d 1365 (5th Cir.1972) (twenty-seven month delay in state habeas corpus proceedings); *Dozie v. Cady,* 430 F.2d 637 (7th Cir.1970) (seventeen month delay in direct appeal); *Odsen v. Moore,* 445 F.2d 806 (1st Cir.1971) (thirty four month delay in direct appeal).

Similarly, the Third Circuit has granted relief because of the inordinate delay in state court proceedings. In *United States ex rel. Geisler v. Walters,* 510 F.2d 887 (3d Cir.1975) habeas corpus relief was granted after a three year delay in disposing of a new trial motion. In *United States ex rel. Senk v. Brierley,* 471 F.2d 657 (3d Cir. 1973) similar relief was granted after a three and one-half year delay in disposing of a PCHA petition. In *Codispoti v. Howard,* 589 F.2d 135 (3d Cir.1978), the court held that the petition for habeas corpus was not premature because of a failure to exhaust state remedies, and remanded to the district court for an evidentiary hearing to determine why petitioner's new trial motion had not been disposed of for twelve years.

 We find that the allegations set forth in this petition raise a serious question as to the adequacy of the state remedies available in practice. The nine month period between petitioner's conviction and the filing of a notice of appeal, and the twenty-four month period since, are sufficient to raise a prima facie question of denial of due process. In light of the court's ruling we need not address the remainder of petitioner's claims at this stage.

An appropriate order will issue.

---

3. It is conceivable that the delay is attributable in part, to a change of counsel following petitioner's conviction.