UNITED STATES of America EX
REL. John E. MURRAY, Jr.
# C–60247, Petitioner,

v.

Lamar K. CARTER, Warden, Joliet
Correctional Center,[1]
Respondent.

No. 98 C 1267.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 2, 1999.

John E. Murray, Jr., pro se, Joliet, IL, pro se.

*MEMORANDUM ORDER*

SHADUR, Senior District Judge.

In February 1998 John E. Murray, Jr. ("Murray") filed a 28 U.S.C. § 2254[2] Petition for Writ of Habeas Corpus ("Petition") asserting several claimed constitutional deprivations in conjunction with, and later flowing from, his conviction of two murders back in 1975. This Court swiftly issued a March 2, 1998 memorandum order (the "Order," a copy of which is attached) dismissing the Petition for

---

1. According to the current filings referred to in the body of this opinion, James Chrans is now the Joliet Warden and would therefore be the respondent required to act if habeas relief were granted. This opinion has simply retained the original case caption to avoid confusion.

2. All further references to Title 28's provisions will simply take the form "Section—."

Murray's failure to have exhausted state remedies and specifically pointing (as this Court's colleague Honorable Brian Barnett Duff had done some years earlier in response to another Section 2254 effort by Murray) to a mandamus proceeding as the course of action still available to Murray in the state court system.

Although the court docket in this case reflects that a copy of the Order was mailed to Murray, he claims not to have received it.[3] As Murray explains, after he had heard nothing about his lawsuit for an extended period of time, he first got around to asking a lawyer friend to look into the matter something like 15 months (!!) after the issuance of this Court's March 1998 dismissal order. It was only then, he says, that he learned of the dismissal.

Now Murray comes in with what he captions "Extraordinary Writ, Petition for Writ of Mandamus," in which he asks for this relief:

> Wherefore Your Petitioner seeks this Honorable Court to Compel and Order the Circuit Court of Cook County, Illinois, Criminal Division in cause 75–132; *People v. John E. Murray Jr.;* To Vacate and Remand his Remaining Two Concurrent Indeterminate Sentences of not less than twenty-five years and not more than seventy-five years, as the Illinois Supreme Court should have done because it is the *ONLY CURE*, due to the perpetual prejudices, sufferings and hardships the Four Illegal Counts the

Court finally Vacated Twenty years Too late. That Petitioner's Yoke Under These Sentences in Excess of Twenty Years constitutes Cruel and Unusual Punishment, Double Jeopardy, and Violates His Rights To Equal Protection of Law and Due Process; All Violations of the United States Constitution and In The Interest of Fundamental Fairness; Petitioner Should Be Resentenced.: . . .

As an alternative to that remedy, but advancing the same basis for relief, Murray also submits a "Motion for Reconsideration of Memorandum Order of 3–2–98."

Especially in light of Murray's pro se status (see *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam)) and in an effort to avoid further procedural twists and turns,[4] this Court will put the best face possible on Murray's efforts irrespective of the labels that he has attached to his filings. And as already suggested in n. 3, for that purpose this Court will accept Murray's representation of not having received a mailed copy of the Opinion when it was issued.

■ Even so, Murray's attempted invocation of relief via mandamus fails for more than one reason. Quite apart from the problematic notion of this Court's having any power to exercise such jurisdiction to compel the revision of a final judgment pronounced by no less than the Illinois Supreme Court (in the sequence explained

---

3. Murray's claim of nonreceipt seems highly plausible. Even though his Petition had named Joliet's then Warden as respondent, the Clerk's Office docket inexplicably shows the Order as having been mailed to Murray at *Pontiac* Correctional Center ("inexplicably" may be just a tad too strong—that address dated back to 1994, when Murray had filed his first habeas petition assigned to Judge Duff and was presumably in custody at Pontiac). Such plausibility is further bolstered by the fact that if Murray *had* known of the Opinion he would certainly have had no incentive to delay in seeking to pursue the matter, either by seeking reconsideration before this Court or by taking it up on appeal to our Court of Appeals.

4. Order at 3 adverts to Justice Wiley Rutledge's concurring opinion in *Marino v. Ragen*, 332 U.S. 561, 563, 68 S.Ct. 240, 92 L.Ed. 170 (1947). This Court has always been keenly aware of the procedural roadblocks that Illinois has too frequently placed in the path of the substantive determination of prisoners' rights—while still a law student this Court authored the section dealing with that subject in the University of Chicago Law Review's *Note, A Study of the Illinois Supreme Court*, 15 U. of Chi. L.Rev. 107, 118–31 (1947), and it then had the extraordinary good fortune, while still in law school, to have that work both cited and quoted by Justice Rutledge (*Marino*, 332 U.S. at 568 n. 7 and 570 n. 11, 68 S.Ct. 240).

a bit later)—posing a *Rooker–Feldman* problem, to say the least—mandamus is an ill-fitting remedy to begin with: By definition it compels officials to perform only the clearest of duties, and that description certainly does not encompass the substantive claim advanced by Murray. If Murray's constitutional rights have in fact been violated by decisions of the Illinois judiciary, Section 2254 provides the appropriate path for relief. And in that respect, if the current filing were to be treated as a *new* Section 2254 petition, it would be untimely—for well over a year has elapsed since the last event referred to in Section 2254(d)(1) would have begun the ticking of the one-year limitation clock established by that statute.

■ So Murray is left with his Motion for Reconsideration, which from a conceptual point of view must be characterized as a Fed.R.Civ.P. ("Rule") 60(b) motion for relief from the March 1998 judgment of dismissal. And less than a week ago our Court of Appeals has reconfirmed that this Court simply has no power to entertain a so-long-delayed motion. Rule 60(b) allows only one year for the filing of a post-judgment motion that seeks relief on grounds of "inadvertence" or "excusable neglect" (Rule 60(b)(1)), and even under Murray's own version of events it was certainly neglectful for him to have permitted his Petition (even though he believed it had not been acted upon) to go without any followup inquiry for 15 months. Although Murray's inattention was certainly excusable for *some* period of time (the period during which he could reasonably have expected this Court might need to reach and address the matter), there can be no quarrel with the notion that he waited a good deal too long before even asking about it.

■ But it is really irrelevant whether the length of Murray's delay was reasonable or unreasonable, for as Rule 60(b) is written the mere fact of delay in excess of a year is fatal. *Berwick Grain Co. v. Illinois Dep't of Agric.*, 189 F.3d 556, 559

(7th Cir.1999) has just repeated the principle that dooms Murray's current motion:

> At a minimum, though, it is clear that after a year a district court loses jurisdiction to grant a Rule 60(b)(1) motion, *Brandon v. Chicago Bd. of Educ.*, 143 F.3d 293, 296 (7th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 374, 142 L.Ed.2d 309 (1998); [*United States v.*] *Deutsch,* 981 F.2d [299,] 302 [(7th Cir.1992) ].

And it may be added parenthetically that Murray cannot escape that result by looking to the catchall provision of Rule 60(b)(6)(which is not subject to the one-year outside limit imposed on Rule 60(b)(1)), for as *Berwick Grain,* at 559 teaches:

> [T]he two subsections are mutually exclusive; *see Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *Webb v. James,* 147 F.3d 617, 622 (7th Cir.1998).

Where as here Murray's conduct fits within the "inadvertence" or "excusable neglect" categories, he cannot shift gears into the more generalized Rule 60(b)(6) mode as a way to confer jurisdiction on this Court.

■ This opinion could well end here: Murray loses. But both (1) because it must necessarily be frustrating for someone in his position to be rejected on technical grounds without a look at the merits and (2) because the original lack of notice of dismissal of his Petition was certainly not Murray's fault, this Court will go on to explain to Murray that he would have fared no better if he had dodged the fatal bullet of untimeliness (and hence of this Court's present lack of jurisdiction).

As quoted earlier, Murray's current mandamus-cum-habeas Petition is limited to seeking resentencing on his unaltered convictions of two murders, encompassed within two still-remaining counts of conviction. But in that respect his accompanying documents (identified here by their

appendix designations as "App.—") reflect this sequence of events:

1. On September 29, 1995 the Illinois Appellate Court for the First District, addressing Murray's appeal from the denial of his second post-conviction petition, issued an unpublished Order (App. C) that stated in part that the court lacked supervisory authority to consider reducing Murray's then-existing six murder counts to two—one for each murder. As the Appellate Court informed Murray, any such relief could come only from the Illinois Supreme Court.

2. After an unsuccessful effort to obtain reconsideration from the Appellate Court, Murray then filed a pro se Motion for Supervisory Order in the Illinois Supreme Court (App.E), citing *People v. Mack*, 105 Ill.2d 103, 137, 85 Ill.Dec. 281, 473 N.E.2d 880, 898 (1984) as authority for the proposition that the six concurrent indeterminate terms of 25 to 75 years each should not have been imposed for the two murders of which he was convicted (essentially a principle of just one conviction for one crime). Most importantly for present purposes, Murray *expressly* presented these arguments to the Illinois Supreme Court:

> Further, remandment for resentencing is required because it cannot be determined what effect, if any, the four concurrent sentences had on the two sentences, legally imposed. The minimum sentence for murder was fourteen years at the time of your movant-petitioner's sentencing. He was convicted of accountability as he had minimal participation in the crime.

> In addition, movant-petitioner has been severely prejudiced for over twenty years, (the duration of his incarceration) and remandment is the *only* cure, as a result of this perpetual prejudice. These illegal sentences have caused him great suffering and prejudice in areas such as job assignments, security status, prison transfers and the twelve yearly parole denials by the Illinois Prisoner· Review Board. The Board specifically states each time, the six concurrent convictions.

\*   \*   \*   \*   \*   \*

> Finally movant-petitioner, John E. Murray Jr., *pro se,* reiterates the fact that not only must his sentences be vacated, but the two legal counts must be remanded for resentencing, not only because an adequate determination cannot be made what effect the four illegal concurrent sentences had on the ac-·tual length of the sentences and the twenty years of prejudice suffered by movant-petitioner, *pro se,* as a result of the illegal concurrent sentences.

3. On June 4, 1996 the Illinois Supreme Court ordered the Illinois Attorney General to file a response to Murray's Motion for Supervisory Order (App.F). Then on October 8, 1996 the Illinois Supreme Court issued this Order (App.G):

> The motion by movant for a supervisory order is *allowed in part.* The Circuit Court of Cook County is directed to amend the mittimus in *People v. John E. Murray, Jr.,* No. 75–132, to reflect that defendant is convicted of two murders and not six murders. The sentences shall remain as stated in the mittimus: not less than twenty-five years and not more than seventy-five years for each of two murder convictions, the sentences to run concurrently to each other.

4. Almost immediately Murray filed a petition for rehearing in the Illinois Supreme Court (App.H), complaining of that court's asserted failure to have responded to his request that it not only vacate the excess convictions on four counts (as the Supreme Court had in fact done) but that it also remand the · case for a new sentencing hearing on the remaining two (and concededly legal)

counts of conviction. That petition was rejected by the Illinois Supreme Court by a one-sentence order entered December 16, 1996.[5]

That recital alone would compel the rejection on the merits of Murray's effort to obtain federal habeas relief. As he himself recognizes, his concurrent sentences of 25 to 75 years on the two valid counts of conviction are valid in themselves. And it simply cannot be said that the Illinois Supreme Court's twice-repeated refusal to vacate those sentences and to send the case back to the trial court for a fresh look at the matter could pass muster under the strict constraints set by Section 2254(d):

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In that respect it must be recognized that the state court trial judge in Murray's case, then Circuit Judge Louis Garippo, had all of Murray's criminal conduct (the two murders) before him at the time that he imposed the original sentences in the underlying case, and that Judge Garippo's imposition of six fully concurrent sentences meant that Murray was punished no more severely for the third through sixth counts of conviction than he would have been for the two counts that have been left undisturbed. At least it was certainly rational for the Illinois Supreme Court to have taken that view, and nothing about that decision can be characterized as having violated Murray's constitutional rights under "clearly established Federal law, as determined by the Supreme Court of the United States." [6]

Thus Murray should realize that he would have fared no better if he had received prompt notice of the March 1998 dismissal of his Petition and if he had then filed a timely motion for reconsideration, in which he withdrew the grounds for relief that had rendered his Petition unexhausted and thus limited his remaining contention to the claimed constitutional infringement caused by the Illinois courts' refusal to remand for sentencing. That alternative would have led to his quick defeat too.

---

5. Incidentally, that order was mailed to Murray at Pontiac, where he was then still in custody (see n. 3).

6. This situation contrasts dramatically with the one addressed by this Court's colleague Honorable Paul Plunkett in *United States ex rel. Mota v. Fairman*, 624 F.Supp. 789 (N.D.Ill.1985) (a decision cited by Murray). There the Illinois Supreme Court had vacated a number of counts of conviction on the same basis that caused Murray's excess four counts to be vacated by that court. But the Supreme Court also knocked out an even more serious charge of armed violence on another ground. Because Judge Plunkett found that there was a possibility that the sentence imposed could have been heavier because the trial judge may have "considered [armed robbery] convic-

tions that were later determined to be invalid" (624 F.Supp. at 792) and, even more significantly, he further found that the vacated armed violence charge *did* influence the sentence, he held the sentence was constitutionally tainted. But here there is no rational basis for speculating that an experienced jurist such as Judge Garippo would have viewed Murray's actual conduct—two murders—more seriously because of the fact that they could then have been viewed as coming under the rubric of more than two criminal statutes, to say nothing of the absence of any indication that he actually did so. Even more to the point in light of the newly constricted language of Section 2254(d)(1), such a contention finds no warrant in clearly established United States Supreme Court jurisprudence.

*Conclusion*

Nothing in Murray's current submissions requires an evidentiary hearing. Of his two chosen paths for relief, mandamus fails for more than one reason and the motion for reconsideration fails for lack of jurisdiction. Hence Murray's motions are denied in their entirety.