81,783-01,02

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 03 2015

Abel Acosta, Clerk

IN THE JUDICIAL DISTRICT COURT
203 OF DALLAS COUNTY, TEXAS

RODNEY L. WOODS,                          )
        Petitioner,                       )
             vs.                          )
STATE OF TEXAS,                           ) WRIT NO. W89-A4738-P(A)
        Respondent.                       )
                                          )

## PETITIONER'S REPLY TO STATE'S RESPONSE FOR
## WRIT OF HABEAS CORPUS

Comes now, petitioner Rodney L. Woods (Pro-se in this matter) and respectfully submits this reply to the State's Response of petitioner's state rights here in Texas, and his United States Constitutional Rights being violated.

## JURISDICTION

Petitioner Woods, request this Court to Vacate his Conviction and or Sentence in the above captioned case (Criminal) pursuant to the Texas Rules of Procedure For Post-Conviction Remedies. Petitioner asserts the conviction and sentence in this cause was in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

## STANDARD OF REVIEW

The standard of review for a pro-se complaint is to be considered liberally. If this Court can reasonably read this pleading to state a valid claim, this Court should grant this action despite any failure to cite proper legal authority, confusion of legal theories or poor syntax. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).

## BACKGROUND

The True Bill Of Indictment filed on November 10, 1989, under Cause No. F-89A4738-QP - alleges on or about November 3, 1989, petitioner Woods, did unlawfully, knowingly and intentionally deliver a simulated controlled substance, to-wit: a white powdery substance, to D.L. GLAGGET, hereinafter

-1-

called the complainant, and said defendant did, expressly and in a manner that would lead a reasonable person to believe that the substance is a controlled substance, represent the said simulated controlled substance to be controlled substance, to-wit: COCAINE...

Petitioner Woods originally pleaded not guilty to said offense under Cause No. F-89A4738-QP.

However, upon the advice of counsel, on April 27, 1990, petitioner pled guilty to unlawful **POSSESSION** of a simulated substance, pursuant to WAIVER OF JURY/FELONY PLEA OF GUILTY/NOLO CONTENDERE/INDICTMENT/INFORMATION. (See EXHIBIT - A, attached to and enclosed in the original post-conviction motion and memorandum of law in support).

Also, on January 31, 1990, a True Bill Of Indictment was filed under Cause No. F-9029380-UP - **alleging** on or about November 24, 1989, petitioner Woods, in the County of Dallas and State of Texas, did unlawfully, knowingly and intentionally possess with intent to deliver, a controlled substance, namely: Cocaine, in an amount by aggregate weight including any adulterants or dilutants of less than 28 grams....

Petitioner originally pleaded not guilty to said offense under Cause No. F-9029380-UP.

Following the advice of counsel, petitioner Woods proceeded to trial where in April 1990, a jury found petitioner guilty of said offense contained in the State's indictment.

Defense counsel for petitioner failed to pursue a direct appeal.

ARGUMENT

Cause No. W89-A4738-P(A):

The state's response contends petitioner may not avail himself of his constitutional right to challenge a fundamental miscarriage of justice, because is not currently confined in the state of Texas.

-2-

Next, the state assert a doctrine of laches should bar this court from reaching the merits of petitioner Woods claim[s].

It is well settled that a petitioner must exhaust all available state court habeas corpus remedies before requesting a federal court to consider the merits of his claims. 28 U.S.C. §2254(b) and (c). The exhaustion requirement is designed to "protect the state court's role in the enforcement of federal law and prevent the disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. 509, 518, 71 L. Ed. 2d 379, S. Ct. 1198 (1982). In order to exhaust, a petitioner must "fairly present" all of his claims to the highest state court for review. Shute v. State of Texas, 117 F.3d 233, 237 (5th Cir. 1997); Deters v. Collins, 985 F.2d 789, 795 (5th Cir. 1993); Richardson v. Procunier, 762 F.2d 429, 430-31 (5th Cir. 1985).

A habeas corpus petitioner may satify this requirement by presenting both the factual and legal substance of his claims to the sentencing court in an application for a writ of habeas corpus pursuant to the article 11.072, Texas Code of Criminal Procedure. Alternatively he may file an application for habeas corpus relief in the convicting court pursuant to article V §8 of the Texas Constitution. See Rodriquez v. Court of Appeals Eight Supreme Judicial District, 769 S.W.2nd 554, 557 (Tex. Crim. App. 1989) (en banc) (holding that article V §8 of the Texas Constitution, combined with article 11.05 of the Texas Code of Criminal Procedure, confers general jurisdiction in the district court to issue writs of habeas corpus, even in cases where the district court has no other jurisdiction over the matter in controversy). In the event the district court denies the habeas petitioner has a right to appeal to the Texas appellate courts and to petition the Texas Court of Criminal Appeals for discretionary review.

The state urges this court to hold only a federal court can issue a writ of habeas corpus, because petitioner is in custody of the United States

-3-

government.

Petitioner Woods request this court to determine whether the United States Supreme Court is correct is addressing "Substance over Form" and "Fairness over Finality" especially where it pertains to a violation that is constitutional in magnitude. Reed v. Farley, 512 U.S. 339 (1994) recognized, a habeas review is available to check violations of federal laws when the error "qualifies as 'a fundamental defect which inherently results in a complete miscarriage of justice;'" (citing Hill v. United States, 368 U.S. 424, 428 (1962).

The Sixth Amendment guarantees the right to competent counsel not just at trial, but during all "critical stages of the prosecution." United States v. Wade, 388 U.S. 218, 237, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967).

"A critical stage is one where potential substantial prejudice to the defendant's right adhere in the ... confrontation [of the accused by the prosecution] and where counsel's abilities can help avoid prejudice." Coleman v. Alabama, 399 U.S. 1, 9, 26 L. Ed. 2d 387, 90 S. Ct. 1999 (1970).

The U.S. Supreme Court's decisions in Lafler v. Cooper, 132 S. Ct. 1376, 1387, 182 L. Ed. 2d 398 (2012) and Missouri v. Frye, 132 S. Ct. 1399, 1406, 182 L. Ed. 2d 379 (2012) emphasized ineffective assistance of counsel claims runs throughout the plea bargaining process.

Defense counsel - Kenneth Weatherspoon, (State Bar No. 21004100) represented petitioner Woods in Cause No. F-89A4738-QP - Unlawful Delivery Of A Simulated Controlled Substance. Had counsel - Weatherspoon thoroughly investigated the state's evidence, states's statute, the plea agreement and interviewed the state's witnesses, then a different result would have came about. A simulated controlled substance is not a controlled substance, it is simply a substance that is wrongly represented to be a controlled substance. As the Texas statute illustrate, the Term "counterfeit substance" has a defended, well-established meaning distinct from the definition of a "simulated" or "limitation" controlled

-4-

substance offense. Therefore, petitioner Woods respectfully request this court to apply this definition, rather than a definition based on the plain meaning of the term "counterfeit." See Magnano Co. v. Hamilton, 292 U.S. 40, 46-47, 78 L. Ed. 1109, 54 S. Ct. 599 (1934).

Texas provides a separate offense for the possession or delivery of a simulated controlled substance. UNIFORM CONTROLLED SUBSTANCES ACT §405 (1994); TEXAS HEALTH & SAFETY CODE §482.002. Under Texas law, a "simulated controlled substance" is defined as " a substance that is purported to be a controlled substance, but is chemically different from the controlled substance it is purported to be." TEXAS HEALTH & SAFETY CODE §482.001(4). Thus, a simulated controlled substance is NOT a controlled substance.

Under Criminal Law 12 §46.4 - Counsel duties in representing a criminal defendant, counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest, a duty to consult with the defendant on important decisions, a duty to keep defendant informed of important developments in the course of the prosecution and a duty to bring to bear such skill and knowledge as well as render the trial a reliable adversarial testing process. The objective standard in this case, is whether defense counsel - Weatherspoon made such error[s] that the attorney was not functioning as counsel guaranteed by the Sixth Amendment. Lafler v. Cooper, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012) and Missouri v. Frye, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012).

The Sixth Amendment right-to-effective-assistance-of-counsel guarantee recognized "the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty." Johnson v. Zerbst, 304 U.S. 458, 462-63, 58 S. Ct. 1019, 82 L. Ed. 2d 1461 (1938). "Of all the rights that an accused person has, the right to be represented by competent counsel is by far the most pervasive, for it affects his ability to assert any other rights." Cronic, 466 U.S. at 654. Thus, a defendant requires an attorney's guiding hand through

-5-

every stage of the proceedings against him.

Generally, counsel's strategic decisions are afforded deference so long as they are based on counsel's "professional judgment." Strickland v. Washington, 466 U.S. 668, 680 (1984). However, if a purportedly tactical decision is **not** preceded by a reasonable investigation, then it is **not** sufficiently informed and **not** entitled to the deference typically afforded counsel's choices. See Sears, 130 S. Ct. at 3265.

The statutory definition of delivery of a (simulated) controlled substance in Texas, as defined by section 481.112 of the Texas Health and Safety Code, encompasses activity that does not fall within section definition of "drug trafficking offense." Section 481.112 criminalizes the knowing manufacture, delivery, or possession with intent to deliver a **controlled substance**. See TEXAS HEALTH & SAFETY CODE ANN. §481.112(a) "Deliver" is defined, in relevant part, as "to transfer, actually or constructively, to another a **controlled substance**," and it "**includes** offering to sell a **controlled substance**. In United States v. Gonzales, 484 F.3d 712, 714-15 (5th Cir. 2007) held that offering to sell a controlled substance lies outside the section definition of "drug trafficking offense," since the section 2L1.2 "covers only the manufacture, import, export distribution, or dispensing of a controlled substance (or possession with the intent to do any of these things.") Garza-Lopez, 410 F.3d at 274. Thus, by inspecting the language of section 481.002, defense counsel – Weatherspoon, prosecuting district attorney – Shannon Ross and or the trial court judge should **not** have allowed, presented or adjudicated petitioner's cause in question under the circumstances therein.

Counsel – Weatherspoon has an obligation to protect his client's interest and to zealously defend his client within the bounds of the law. Gideon v. Wainright, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963).

A reasonably competent attorney will attempt to learn all of the facts of the case, make an estimate of the likely sentence, and communicate the result of that analysis. The American Bar Association (ABA) standards state "there is no exhaustive list of defense counsel's obligations, [p]revailing norms of practice a re guides to determining what is reasonable." Strickland v. Washington, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The ABA statndards indicate that "[d]efense counsel should not recommend to a defendant acceptatnce of a plea unless appropriate investigation and study of the case has been completed. ABA standards for Criminal Justice Pleas of Guilty, Standard 14-3.2(b) (3rd Ed. 1999). "It is defense counsel's responsiblity to investigate not only the facts concerning the offense, but also facts that go to the defendant's potential sentence, including his or her prior record." Id., Commentary on Standard 14-3.2 (b), p. 123. While counsel has wide latitude to make strategic decisions, "strategic decisions," "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91. The type of legally erroneous advice petitioner Woods stress--he received from defense counsel defense counsel - Weatherspoon is precisely the type of information that is likely to impact a plea decision. The basis of petitoner argument is that: he would not have rejected an plea offer and might have provided the required proffer if he had been fully informed as to the "extent of the monumental sentencing risk he was taking by continuing with the trial." Moreover, it can not be overlooked that petitioner entered into a plea to run concurrent with said offense in question, which speaks volumes about whether or not he would have accepted a plea, would the prosecution offer a plea nad would the court accept a plea.

A defendant in a criminal proceedings has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the

proceedings... See e.g. Hill v. Lockhart, 474 U.S. 52, 85 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); See generally Missouri v. Frye, 132 S. Ct. 1399, 1405, 182 L. Ed. 2d 379 (2012), and sentencing; see, e.g. Glover v. United States, 531 U.S. 198, 202-04, 121 S. Ct. 696, 148 L. Ed. 2d 604 (2001); Mempa v. Rhay, 389 U.S. 128, 134, 88 S. CT. 254, 19 L. Ed. 2d 335 (1967). The attorney has an "overaching duty to advocate the defendant's cause." Strickland, 466 U.S. at 688.

The Supreme Court's recent decisions in McQuiggin v. Perkins, (No. 12-126) (S. Ct. May 28, 2013), which held actual innocence if proved serves a gateway through which a petitioner may pass whetherthe impediment is a procedural bar or expiration of the AEDPA statute of limitations... And Trevino v. Thaler, (No. 11-10189) (S. Ct. May 28, 2013) recognized that "procedural default will not bar a post-conviction court from hearing a substantial claim of ineffective assistance of counsel..."

The Supreme Court held in Gall v. United STates, 552 U.S. 38, 51, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007), we must first ensure that the sentencing court made "no significant procedural error," including "selecting a sentence based on clearly erroneous facts," or failing to adequately explain the chosen sentence."

Pursuant to United States v. Tucker, 404 U.S. 443, 447, 92 S. Ct. 589, 591-92, 30 L. Ed. 2d 592 (1972), held when errors of this nature are alleged to have affected the defendant's sentence, we review the lower court record to determine whether the court actually relied on the inaccurate information in sentencing the defendant. "A sentencing court demonstrates actual reliance on misinformation when the court gives 'explicit attention' to it, 'founds' its sentence 'at least in part; on it, or gives ' specific consideration' to the information before imposing the sentence." Id. Tucker, 404 U.S. at 444, 447 92 S. Ct. at 590, 592.

Where a "plain error" is found to exist, a court of appeal may "exercise

its discretion to notice a forfeited error... only if ... the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." United States v. Cotton, 535 U.S. 625, 631, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002).

It is rarely, if ever, arguable that an illegal sentence does not constitue plain error. United STates v. Pawlinski, 374 F.3d 536, 540-41 (7th Cir. 2004). By its very nature, there is an error it is plain, it affects the defendant's substantial right and it impugns the reputation of the judicial proceedings. "It is a fundamental miscarriage of justice to give a person an illegal sentence that increase his punishment, just as it is to convict an innocent person." United States v. Paladino, 401 F.3d 471, 483 (7th Cir. 2005). And by allowing an illegal sentence "to stand would impugn the fairness, integrity, and public reputation of the judicial proceedings." Gibson, 356 F.3d at 767.

In less than four (4) months, defense counsel Weatherspoon, had entered his appearance, could not or would not mount a viable defense for his client, counsel failed to call any witnesses (expert or otherwise) on behalf of the defense. A finger print expert, DNA expert or drug analysis expert to ensure the prosecution's case can pass the constitutional mustard that the Sixth Amendment requires. United States v. Cronic, 466 U.S. 648, 104 S. Ct. 2039, L. Ed. 2d 657 (1984), the Supreme Court held that "the right to effective assistance of counsel is thus, the right of accused to require the prosecution's case to survive the crucible meaning of adversarial testing. When a true adversarial criminal trial has been conducted--even defense counsel may have made demonstrable errors-the kink to testing envisioned by the Sixth Amendment has occurred" Id. at 2045; Strickland, supra. Independent evidence, whether that would come from the baggie alleged to have contained cocaine, and Lab Analysis regarding whether or not the alleged drug discovered was fact cocaine and the actual amount therein, or fingerprint[s]/DNA linking

petitioner to the prosecution to theory. This crucial point of evidence was relied on by the prosecution to carry the day as independent evidence that petitioner Woods was waist-deep in the offens[s] charged in the indictment. This was paramount, because of its independency to substantitate the prosecution's case-in-chief. Absolutely, had defense counsel - Weatherspoon, (a veteran, professional trial counsel) took the initiative to have prints lifted from the baggie examined by—independent finger-print expert[s], and or have that baggie examined by - independent DNA expert[s], this would have helped serve as a catalyst in negotiating a plea, or provided credible evidence for the defense in trial depending upon the expert[s] findings. Either way, defense counsel would have been protecting his client's interest, and zealously defending him within the bounds of the law. Nevertheless, armed with this information, defense counsel - Weatherspoon proceeded to trial without subpoenaing one witness for his client and the defense. Petitioner was the only witness to testify for the defense. Thus, logically speaking, without any witnesses to corroborate petitioner's claim of innocence (which counsel was privy to prior to trial), it would have been advantageous for defense counsel to discuss a plea on this offense also, since he had negotiated a plea under Cause No F89-A4738 to run concurrent with this offense in question. Instead from every legal indication, it appears defense counsel - Weatherspoon, advised his client to enter into a sky dive without so much as a parachute. Therefore, the question before this court is whether under the Sixth Amendment of the United States Constitution, Cannon Rules of Professional Conduct and The American Bar Association did petitioner Woods receive ineffective assistance of counsel at any critical stage[s] of Cause No. F90-29380 and or Cause No. F89-A4738.

## CONCLUSION

For our adversarial system of criminal justice to function, a defendant must have one person who is zealously acting in his interest - his defense

lawyer. Criminal defense lawyers have many duties. Those duties include trying to save their client from their own folly, especially as they face an intimidating and even frightening criminal justice system. That point is so true in critiquing the awesome responsibilities of a defense attorney. Now the operative question stands as who's to save the defendant from the folly, or the egregious error of his defense counsel.

Petitioner has submitted EXHIBITS A through F along with case authority to demonstrate by a preponderance of evidence, that he received ineffective assistance of counsel in Cause Nos. F89-A4738 and F90-29380.

Petitioner Woods contends but for counsel - Weatherspoon's ill-advice, lack of investigation and preparation that a different result - a beneficial one for petitioner would have transpired.

Based upon the above significan and compelling circumstances this Court should Vacate petitoner's current conviction in this case. At the minimum an evidentiary hearing should be ordered with the appointment of counsel in this case.

The state of Texas request this Court to gather evidence by requesting an affidavit from petitioner's attorney, Kenneth Weatherspoon which provides information needed to dispose of petitioner's claims. First, an attorney is fallible, capable of not recalling certain details. However, petitioner Woods has submitted EXHIBITS A through F, and the record which is NOT fallible, and it does NOT change for anyone. Second, an evidentiary hearing would allow this Court to hear from the attorney in question, the petitioner, the prosecution and petitioner's appointed counsel for the purposes of this hearing and in the interest of justice.

Petitioner states that all of the above is true and accurate to best of his knowledge, and against the offense of state and federal perjury.

DATED: January 26, 2015

Respectfully submitted

/s/ _Rodney Woods_

-11-

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forward to the following by U.S. Mail on January 26, 2015:

Rebecca D. Ott
Assistant District Attorney
State Bar No. 24074842
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399

/s/ *Rodney Woods*
Rodney Lewis Woods #18898-078