# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 20, 2020

Lyle W. Cayce
Clerk

No. 18-41150

Irving Magana Garcia,

*Petitioner—Appellant*,

*versus*

Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:16-CV-632

Before Stewart, Clement, and Costa, *Circuit Judges*.

Per Curiam:[*]

Irving Magana Garcia appeals the denial of his habeas petition. He is a Mexican national who speaks only Spanish. But his attorney recommended that he not use an English interpreter at his murder trial. At the time, Garcia agreed with that advice, and his lawyer told the judge that Garcia did not need

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

an interpreter throughout the trial (there was an interpreter when Garcia testified). Garcia now argues that his agreement with his lawyer's advice could not waive the interpreter; he believes that the trial court needed to obtain a waiver directly from the defendant. He also contends that counsel was ineffective in recommending against an interpreter. Garcia's first claim fails on the merits, as the state court reasonably concluded there was a valid waiver. And Garcia's ineffective-assistance-of-counsel claim is procedurally barred. We therefore affirm.

## I.

Garcia shot and killed Cristian De Los Santos Sanchez in McAllen, Texas. Garcia admitted he was the shooter. The murder trial came down to whether he acted in self-defense. Garcia testified that he shot Sanchez because, after a heated conversation, Sanchez reached for "what appeared to be a gun." The jury rejected Garcia's self-defense theory and convicted him. But it found that sudden passion spurred the killing, which resulted in a sentence of 20 years.

Most of the witnesses spoke English. Because his lawyer, Fernando Mancias, rejected an interpreter, Garcia did not comprehend this testimony. However, Mancias is bilingual and gave Garcia brief summaries of "harmful" witness statements. Spanish-speaking witnesses—including Garcia—testified about the key issue: Garcia's state of mind.

After sentencing, Garcia retained different counsel and sought a new trial. He argued that the judge's failure to appoint an interpreter "denied his rights to understand and confront his accusers and to assist in his own defense." Garcia also claimed that his trial counsel was ineffective for failing to request an interpreter. After the motion was overruled without explanation, Garcia appealed. The state court of appeals abated the appeal and remanded for a hearing on the motion.

No. 18-41150

At the hearing, Garcia conceded that Mancias had informed him of his right to have an interpreter but had recommended he not request one. Garcia further conceded that he agreed with Mancias's recommendation but only because Mancias had warned that an interpreter "would distract [Mancias] and not let him concentrate very well." Confirming Garcia's account, Mancias explained that he had advised against an interpreter; in his view, having one "would be very distracting" for Mancias and the jury.

The prosecutor also testified. She remembered that during an off-the-record bench conference, the trial judge "asked . . . Mancias, are you going to want an interpreter? And he said no."

The trial judge denied the new-trial motion, finding that:

- "Garcia was aware of his right to an interpreter and for valid reasons, pertaining to trial strategy, did not request an interpreter."
- "Garcia waived his right to an interpreter during an unrecorded bench conference."
- "Mancias[] provided effective assistan[ce] of counsel during a difficult case."
- "That counsel discussed . . . Garcia's right to an interpreter and had a valid trial strategy in recommending that they not seek the appointment of an interpreter."

With the motion resolved, the state appellate court reinstated Garcia's appeal and affirmed his conviction.

Garcia next petitioned the Texas Court of Criminal Appeals for review, contending only that he did not waive an interpreter.[1] It affirmed in

---

[1] Instead of specifically raising his ineffective-assistance claim, Garcia asked only whether "the Court of Appeals err[ed] in overruling each issue raised on appeal about the district court . . . denying [his] motion for [a] new trial."

a divided opinion. *Garcia v. State*, 429 S.W.3d 604 (Tex. Crim. App. 2014). The majority concluded that Mancias told Garcia "that he had a right to an interpreter," that Garcia "agreed with counsel not to request an interpreter, and that [Garcia] and counsel communicated their desire not to have an interpreter to the trial judge."[2] *Id.* at 609.

Garcia then sought state habeas relief, alleging ineffective assistance of appellate, but not trial, counsel. After that application was denied, he filed a second application, this time alleging ineffective assistance of trial counsel relating to the interpreter decision. The Court of Criminal Appeals dismissed it as an abuse of the writ, meaning he should have pursued it earlier.

Out of state options, Garcia went to federal court. He filed this habeas action, asserting that Mancias was ineffective for recommending against an interpreter and that the trial judge's failure to appoint one resulted in several constitutional violations. Concluding that Garcia "failed to demonstrate he was prejudiced by [any] constitutional error," the district court dismissed his petition with prejudice. But the court also concluded that Garcia never validly waived his right to an interpreter. He was therefore denied that right and, consequently, "could not confront the evidence presented against him or assist in his own defense." In the district court's view, reasonable jurists could debate whether those deprivations amounted to "structural" error requiring automatic reversal, so it issued a certificate of appealability and appointed counsel for Garcia.

---

[2] The opinion indicates that Garcia personally waived an interpreter in a colloquy with the trial judge. *Id.* at 609. But the parties seem to agree (and the record supports) that Garcia was not present when Mancias told the trial judge that an interpreter was not needed, though Garcia had agreed with that position.

II.

A.

Garcia's first claim is that the Texas Court of Criminal Appeals erred in determining that he waived an interpreter. Because the state court rejected this claim on the merits, Garcia must show not just that it made a mistake—three dissenting justices of the state court thought that was the case—but that it unreasonably applied clearly established law "as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

According to Garcia, waiver of an interpreter requires (1) a personal waiver by the defendant (not just his counsel) that is (2) supervised by the trial court. In other words, Garcia contends that waiving an interpreter requires the same constitutional protections that apply to waiving counsel or pleading guilty. *See Johnson v. Zerbst*, 304 U.S. 458, 465 (1938) (right to counsel); *Brookhart v. Janis*, 384 U.S. 1, 7–8 (1966) (right to plead not guilty). Other rights, however, often those involving "the conduct of the trial" such as whether to object to evidence, may be waived by the attorney without "the fully informed and publicly acknowledged consent" of the defendant. *New York v. Hill*, 528 U.S. 110, 115 (2000) (quoting *Taylor v. Illinois*, 484 U.S. 400, 418 (1988)).

Garcia argues that the right to an interpreter, which he frames as a corollary of the right to be present at trial, is the kind that must be personally waived by the defendant. The problem is that the Supreme Court has never said that (in fact, it has never discussed a constitutional right to an interpreter in any context). He correctly points out that unlike the "contrary to" standard of section 2254(d), the "unreasonable application of" standard does not require a Supreme Court decision directly on point. *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (explaining that section 2254(d)(1) does not require an "identical factual pattern before a legal rule must be

applied" (quoting *Carey v. Musladin*, 549 U.S. 70, 81 (2006) (Kennedy, J., concurring))); *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003) (acknowledging that section 2254(d)(1) "permits a federal court to grant habeas relief based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced").

But while habeas relief is available when a rule previously established by the Supreme Court is unreasonably applied to new facts, it is not available when a state court declines to extend a legal principle. *White v. Woodall*, 572 U.S. 415, 426 (2014). As the Supreme Court has recognized, the line between application and extension of its precedent "is not always clear." *Id.* at 427 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)). Even so, we readily conclude that this falls on the extension side. The constitutional requirements for waiver of an interpreter are uncharted territory. It is not just that the Supreme Court has not adopted Garcia's view that there needs to be a personal, judge-supervised waiver; he fails to identify a single court that has.[3] Because no clearly established federal law addresses the constitutional procedures for waiving an interpreter, the state court did not unreasonably apply Supreme Court precedent in concluding it was enough that Garcia consented to the waiver his lawyer communicated. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam) ("Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor,

---

[3] Federal prosecutions would be unlikely to address the constitutional dimensions of the interpreter issue because a federal statute addresses the issue. *See* 28 U.S.C. § 1827. The statute does require a personal waiver from the defendant once the court determines, or the defendant points out, that English is not his primary language. *Id.* § 1827(d), (f)(1); *see also generally United States v. Tapia*, 631 F.2d 1207 (5th Cir. 1980) (applying section 1827).

it cannot be said that the state court 'unreasonabl[y] appli[ed]' clearly established Federal law." (alterations in original) (quotations omitted)).[4]

## B.

Even when counsel can waive a right and has done so, that decision—like others a lawyer makes in a criminal case—must meet the constitutional standard for effective representation. *See Hill*, 528 U.S. at 115 (noting, when discussing a right that counsel could waive, that "[a]bsent a demonstration of ineffectiveness, counsel's word on such matters is the last"). Garcia's second claim is that Mancias's recommendation to waive the interpreter deprived him of this Sixth Amendment right to effective representation.

This claim runs into a common pitfall of federal habeas law: procedural default. When an adequate and independent state procedural rule barred the federal constitutional claim in state court, the claim cannot be the basis for federal habeas relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Although Garcia developed a trial court record for his ineffective-assistance claim before his direct appeal, he did not assert the claim in the Court of Criminal Appeals. *Garcia*, 429 S.W.3d at 606 n.3 (observing that Garcia's ineffective-assistance claim "is not before us"). That means Garcia did not exhaust the claim on direct appeal. *See Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001) (citing *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993)). Nor did he raise the claim in his first state habeas application. When he did raise ineffectiveness in his second habeas petition, the Court of Criminal

---

[4] We thus need not reach the question the district court grappled with: whether the failure to provide an interpreter is structural error as opposed to the more common type that is subject to harmless-error review. We note, however, that harmless-error analysis generally applies even to the "fundamental right[]" to be present at trial, which Garcia identifies as the source of the interpreter right. *Rushen v. Spain*, 464 U.S. 114, 117–18 & n.2 (1983) (per curiam).

Appeals dismissed it under its abuse-of-the-writ rule, which prevents successive habeas claims when the factual basis for the claim was previously available. *See* TEX. CODE CRIM. PROC. art. 11.07, § 4(a)–(c); *Ford v. Davis*, 910 F.3d 232, 234 (5th Cir. 2018) ("Texas law prohibits its courts from considering a successive habeas petition unless the factual basis of the claim was unascertainable through the exercise of reasonable diligence before the filing of the first application.").

Garcia can overcome this procedural bar only if he "demonstrate[s] cause for the default and actual prejudice as a result of" Mancias's allegedly deficient performance. *Coleman*, 501 U.S. at 750. Garcia suggests that he can show cause under *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), arguing that his *pro se* status in his first habeas application excuses his failure to raise the ineffectiveness claim then. But while it is "virtually impossible" in Texas to raise claims of ineffective trial counsel on direct appeal, this case requires the "virtually" qualification. *Trevino*, 569 U.S. at 417, 423. Garcia had new counsel for his direct appeal. That eliminated the conflict that often prevents the raising of a *Strickland* claim on direct appeal. *See Martinez*, 566 U.S. at 11–12. Garcia and his new counsel also managed to overcome another typical obstacle to direct review of ineffective-assistance claims: the trial court developed a full evidentiary record that allowed the claim challenging trial counsel's performance to be pursued on direct appeal (as it was in the intermediate appellate court). *See Trevino*, 569 U.S. at 425–26. Because this was the unusual case in which state habeas was not "the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim,'" *Trevino* does not apply. *Id.* at 423 (announcing a rule that applies only when, among other things, "the state collateral review proceeding was the 'initial' review proceeding" for the claim alleging ineffective assistance at trial).

No. 18-41150

Long before *Martinez* and *Trevino*, ineffective assistance of counsel on direct appeal could excuse a procedural default, *see Coleman*, 501 U.S. at 753–54, but Garcia does not allege that here.  Nothing in the record indicates why Garcia chose not to pursue all the way to the Court of Criminal Appeals his claim challenging the advice counsel gave him to waive the interpreter.  As a result, he has not demonstrated cause to overcome the procedural default of his ineffective-assistance claim.

\* \* \*

The judgment is AFFIRMED.